UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COREY GENE SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | NO: 15-CV-0065-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 14. This matter was submitted for consideration without oral argument. Plaintiff was represented by Dana C. Madsen. Defendant was represented by Jordan D. Goddard. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158–59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not

reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

**FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4) (i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a) (4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416 .920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a) (4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § § 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff Corey Gene Scott filed an application for supplemental security income ("SSI"), alleging an onset date of July 31, 2007. Tr. 132-38. Benefits were denied initially and upon reconsideration. Tr. 93-96, 103-105. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Lori Freund on June 18, 2013. Tr. 36-70. The ALJ denied benefits (Tr. 16-35) and the Appeals Council denied review (Tr. 1).

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 1, 2011, the application date. Tr. 21. At step two, the ALJ found Plaintiff has the following severe impairments: nonunion right hand scaphoid fracture; attention deficit hyperactivity disorder ("ADHD"); marijuana dependence; alcohol dependence, in reported remission; and history of polysubstance use. Tr. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one

of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 21. The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except lifting and carrying 10 pounds occasionally and 10 pounds frequently with the right upper extremity only; lifting and carrying 20 pounds occasionally and 10 pounds frequently with the left upper extremity; stand, walk and sit 6 hours out of 8 hours workday with a sit/stand option at 45 minute intervals; occasional push and pull with the right upper extremity, crawl, stoop, climbing of ramps and stairs; frequently handle objects with the right upper extremity; never climb ladder, ropes or scaffolds; frequently kneel, crouch and balance; avoid concentrated exposure to extreme cold, excessive vibration, and hazards; limited to simple, routine and repetitive tasks; superficial interaction with the public; occasional interaction with coworkers; would work best with no tandem tasks performed.

Tr. 23. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 30. At step five, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 31. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since November 1, 2011, the date the application was filed. Tr. 32.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts: (1) the ALJ improperly discredited Plaintiff's symptom claims; and (2) the ALJ failed to properly consider and weigh the medical opinion evidence. ECF No. 12 at 8-17.

Defendant argues: (1) the ALJ properly evaluated Plaintiff's credibility; and (2) the ALJ properly evaluated the medical opinion evidence. ECF No. 14 at 3-21.

## DISCUSSION

### A. Adverse Credibility Finding

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. *Id*. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider, *inter alia:* (1) the claimant's reputation for

truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* Absent any evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue,* 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).[1] In this case, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting

---

[1] Defendant argues that the ALJ provided several valid reasons to find Plaintiff less than credible, "and each is supported by substantial evidence." ECF No. 14 at 11. The court declines to apply this lesser standard of review to the ALJ's credibility findings. The Ninth Circuit recently reaffirmed in *Garrison v. Colvin* that "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so;" and further noted that "[t]he governments suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected." *Garrison v. Colvin,* 759 F.3d 995, 1015 n. 18 (9th Cir. 2014); *see also Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014).

effects of [his] symptoms are not entirely credible for the reasons explained in this decision." Tr. 28.

First, the ALJ found that "[i]n terms of the claimant's alleged physical and mental conditions and their corresponding symptoms, the evidence fails to demonstrate that he is totally disabled as a result." Tr. 28. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In support of this argument, the ALJ cites the results of Dr. Jeanette Higgins' mental status exam that "do not support [Plaintiff's] opinion that he is unable to perform any work activities," including: normal gait; mild hyperkinesis; speech within normal limits in rate and tone; adequate eye contact; behavioral approach was cooperative; affect was full range and spontaneous; thought process was coherent and goal directed but for mild tangentiality; thought content was within normal limits; perceptual disturbances were neither reported or observed; and he was oriented to person, place, time and situation. Tr. 29 (citing Tr. 203-204).

Plaintiff argues the ALJ improperly "culled" Dr. Higgins' report for benign findings but ignored findings that supported Plaintiff's claim including a GAF of 50, and mild to moderate work-related limitations in several areas of functioning. ECF No. 12 at 9-10 (citing Tr. 204). However, the ALJ did recount all of the

limitations opined by Dr. Higgins in the decision, including, while not identified by Plaintiff, Dr. Higgins' ultimate finding that Plaintiff "could likely function in a work environment that did not require independent decision making responsibilities and had firm, consistent, and available supervision." Tr. 27 (citing Tr. 204).

Plaintiff also argues that Dr. Kevin Weeks' physical "assessment is entirely consistent with [Plaintiff's] physical claims involving [his] back and wrist as Dr. Weeks notes a limited range of lumbar motion and poor straight leg raising [; and diagnoses] chronic nonunion of right scaphoid [wrist] and back pain and stiffness." ECF No. 12 at 10 (citing Tr. 209-210). However, as noted by Defendant and reflected in the ALJ's decision, aside from pain and stiffness in his back and mildly decreased grip strength in his right hand, Dr. Weeks' physical examination was "otherwise unremarkable," including: normal gait; normal cervical range of motion; no deformity and normal range of motion of wrist joints; no obvious paravertebral muscle spasms, tenderness, crepitus, or effusions; 5/5 motor strength except for mildly decreased grip strength right hand; light touch and pinprick intact; and vibratory sense intact. ECF No. 14 at 5 (citing Tr. 27, 209-10). The ALJ also considered January 2012 negative x-rays of Plaintiff's lumbar spine, C-spine, and T-spine; as well as x-rays of the right wrist showing nonunion of the right scaphoid. Tr. 27 (citing Tr. 207). Overall, despite Plaintiff's argument that

evidence in the record would tend support to his claimed limitations, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the lack of corroboration of Plaintiff's testimony in the medical record as a whole was properly considered by the ALJ, as it did not form the sole basis for the adverse credibility finding.

Second, the ALJ found that "[a] review of the claimant's work history shows the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments."[2] Tr. 28. Poor work history is an appropriate

---

[2] The ALJ also noted that Plaintiff "indicated that he did not stop working due to his impairments but rather that he stopped because he was late for work three days in a row." Tr. 28 (citing Tr. 154). An ALJ may properly discount Plaintiff's credibility in part due to not working for reasons other than his or her alleged impairment. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). However, in this case, Plaintiff consistently reported that he was late for work three days in a row *because of* his alleged back pain (Tr. 42-43, 207), and therefore this particular reason for discounting Plaintiff's credibility was not clear, convincing and supported by substantial evidence. However, any error was harmless because

factor to consider when evaluating Plaintiff's credibility. *See Thomas*, 278 F.3d at 959. Plaintiff argues the record "consistently shows" that he continues to suffer from injuries to his back sustained when he was four years old, and a wrist injury from 20 years ago that never healed. ECF No. 12 at 10. However, the records cited by Plaintiff to support this argument are comprised entirely of Plaintiff's self-report to medical providers. *See* Tr. 202, 203, 207, 276. Moreover, as noted by Defendant, the record confirms the ALJ's finding that Plaintiff had a sporadic work history with poor earnings between 1991 and his alleged onset date in 2007, including multiple years with no reported earnings. ECF No. 14 at 7-8 (citing Tr. 139-44, 147-48). This was a specific, clear and convincing reason to discount Plaintiff's credibility.

Third, the ALJ found that "despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date that [Plaintiff] has not taken any medications." Tr. 28. Rather, as noted by the ALJ, Plaintiff testified that he only takes over-the-counter medications, "which suggests that the symptoms may not have been as limiting as the claimant has alleged in

---

the remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

connection with this application." Tr. 28. Similarly, the ALJ found Plaintiff's lack of medical care since 2008 "casts significant doubt on the extent to which the claimant has been limited by symptoms." Tr. 29. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (treatment of physical ailments with over-the-counter pain medication was "evidence of conservative treatment" sufficient to discount claimant's credibility). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Social Security Ruling ("SSR") 96-7p (July 2, 1996), *available at* 1996 WL 374186 at *7. Specifically, disability benefits may not be denied because of a claimant's inability to afford treatment. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

Plaintiff argues that "it is not appropriate for [the ALJ] to disregard [Plaintiff's] impairment claim for lack of funds." ECF No. 12 at 10-11. Here, Plaintiff testified that he doesn't "get any medical right now" and hasn't since

2006. Tr. 44. He also testified that he hasn't been to a regular doctor in a non-emergency setting since 2006, and the only treatment he has had since 2007 was pain medication and muscle relaxers prescribed after an ER visit for back pain. Tr. 45, 47-49. He has been using over-the-counter medication "once or twice a day" since 2007, and had "no way of filling the prescription" for naproxen. Tr. 48-50. Plaintiff testified he "just dealt with the pain" between 2007 and his ER visit in 2012. Tr. 49. Presumably in recognition of this testimony, the ALJ did note that "financial constraints may have affected [Plaintiff's] inability to obtain medical care," however, the ALJ found "one would still expect to find a greater degree of effort to alleviate symptoms if they were as limiting as alleged." Tr. 28-29. In support of this finding, the ALJ cites Plaintiff's report during a 2013 ER visit that "when [his back pain] gets bad, he comes to the ER to see if he can get something for pain control." Tr. 29, 276. However, as noted by the ALJ, there are no emergency records to confirm these allegations. Tr. 29. The 2013 ER report of back pain is the only ER visit during the adjudicatory period complaining of wrist or back pain, and records indicate Plaintiff is "not a frequent user of the ER system." *See* Tr. 277. Moreover, the court notes that despite testimony that he did not have medical insurance, Plaintiff reported to Dr. Higgins in January 2012 that he did not take medication, and that he received medical care through the CHAS clinic. Tr. 202. Based on the record as a whole, the court finds it was reasonable

for the ALJ to consider Plaintiff's failure to seek treatment, including pain medication, in making the adverse credibility finding. *See Burch*, 400 F.3d at 679 ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). And even assuming, arguendo, that the ALJ did err in this reasoning, any error is harmless because the ALJ's ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Fourth, the ALJ noted multiple inconsistencies that undermine Plaintiff's credibility. Tr. 29. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7, *available at* 1996 WL 374186 at *5; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may rely on ordinary techniques of credibility evaluation). Here, the ALJ notes Plaintiff's inconsistent reports regarding his marijuana use. Tr. 29. Dr. Higgins found that Plaintiff gave "inconsistent reasons" for using marijuana, including: "[m]y wife made me keep smoking because I'm such an asshole when I don't. They prescribed medical marijuana when I was in rehab to help with my PTSD. Regular medication didn't help." Tr. 29, 203. Plaintiff generally argues "it is not unreasonable to assume that over time, the basis for his [marijuana] use simply evolved." ECF No. 12 at 12.

However, conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959; *see also Bunnell*, 947 F.2d at 346 (an ALJ may discredit a claimant's allegations based on relevant character evidence).

The ALJ also notes that the record contains inconsistent reports regarding Plaintiff's educational background. Tr. 29. Plaintiff reported to Dr. Higgins that he was expelled in the ninth grade for smoking marijuana, that he never returned to school or earned a GED, and that he was in special education for reading, writing and math. Tr. 29 (citing Tr. 20). However, on his Disability Report, he stated that he earned his GED in 1992 and he did not attend special education classes. Tr. 155. Then, during the hearing Plaintiff stated he was in Job Corps in 1992, but he left Job Corps when he was 85 percent complete in his trade, and did not get his GED. Tr. 61-62. Additionally, the ALJ notes an inconsistency between Plaintiff's report to Dr. Higgins that his sleep was "pretty bad" because of back pain (Tr. 202); and his report to Dr. Weeks nine days later (Tr. 207), as well as his testimony at the hearing (Tr. 59), that he does not sleep because he is not tired. Tr. 29. Further inconsistent reports to examining providers included Plaintiff's denial to Dr. Higgins that he had significant difficulty with "most activities of daily living such as bathing, cleaning, doing laundry and going grocery shopping" (Tr. 203), which is in direct contrast to Plaintiff's report to Dr. Weeks that he "does very little

housework because of back pain" (Tr. 207). Tr. 29. Finally, despite reporting pain in his left hand to the vocational consultant (Tr. 213-14), Plaintiff did not mention any difficulties with his left hand to examining physician Dr. Weeks (Tr. 207). Tr. 29. The court notes that Plaintiff's briefing fails to identify most of the inconsistencies noted by the ALJ. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). Plaintiff's inconsistent statements throughout the record was a clear and convincing reason to find him not credible.

Fifth, the ALJ found Plaintiff's activities of daily living were inconsistent with his claimed limitations. Tr. 29. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff generally argues, without citation to the record, that the ALJ's reasoning is "simply inadequate." ECF No. 12 at 12-13. Plaintiff is correct that a claimant need not be utterly incapacitated in order to be eligible for benefits. *See Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability."). However, in this case, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Here, Plaintiff testified that "if

[his] back is really hurting" he can sit for five minutes at a time; he can stand for five to ten minutes before his back starts hurting; and he can walk two locks before his back starts hurting. Tr. 58. However, as noted by the ALJ, Plaintiff reported to an ER doctor in May 2013 that he "spends most of his days walking and playing with his children." Tr. 29, 276. Plaintiff also testified that he spends time with his three year old son every day. Tr. 29, 59-60. As noted by the ALJ, caring for a young child "can be quite demanding both physically and emotionally, without any particular assistance." *See Rollins*, 261 F.3d at 857 (Plaintiff's ability to care for young children without help undermined claims of totally disabling pain). Moreover, as noted above, Plaintiff denied to Dr. Higgins in January 2012 that he had "significant difficulty with most activities of daily living such as bathing, cleaning, doing laundry, and grocery shopping." Tr. 203. He only noted that his wrist "gets in the way" when brushing his hair and doing "some cooking." Tr. 203. Finally, the ALJ "noted that in his self-report [Plaintiff] indicated he is capable of house and yard work, caring for his son, and bathing and caring for his dog. He only indicated that he needed some help from his girlfriend." Tr. 29. In his reply brief, Plaintiff argues his function report is not inconsistent with his testimony because it includes limitations on his ability to care for his son "when [his] body lets him," and notes that his girlfriend helps him with caring for his son and his dog. ECF No. 15 at 2-3 (citing Tr. 173). Plaintiff also self-reports that he does

house and yard work when his back and wrist "let [him]" and indicates he "sometimes" needs help. Tr. 174. However, while evidence of Plaintiff's daily activities may be interpreted more favorably to the Plaintiff, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's finding must be upheld. See *Burch*, 400 F.3d at 679. This was a clear and convincing reason, supported by substantial evidence, to find Plaintiff not credible.

As a final matter, the court finds several statements by the ALJ that may have been intended as reasons to find the Plaintiff not credible, were not clear and convincing. First, the ALJ referenced a comment by Plaintiff at the May 2013 ER visit that he is "awaiting social security to pick him up" as "suggestive of a motivation for secondary gain with reference to his allegation of a history of chronic low back pain." Tr. 28, 276. While an ALJ may consider motivation and the issue of secondary gain in evaluating credibility; this single statement cited by the ALJ is not substantial evidence to support a conclusion that Plaintiff was motivated by secondary gain. *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Second, as part of the analysis regarding Plaintiff's inconsistent statements, the ALJ briefly referenced Plaintiff's testimony that he has incurred multiple felonies. Tr. 29. An ALJ may discredit a claimant's allegations based on relevant character evidence including criminal history. *See Bunnell*, 947 F.2d at 346; *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal.

2007) (convictions for crimes of moral turpitude are proper basis for adverse credibility determination). Here, as noted by Plaintiff, the relevance of his criminal history in this context is not clearly explained by the ALJ, and thus does not qualify as a specific, clear and convincing reason to discount Plaintiff's credibility. ECF No. 12 at 12. However, these errors are harmless because, as discussed in detail above, the remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

For all of these reasons, and having thoroughly reviewed the record, the court concludes that the ALJ supported his adverse credibility finding with specific, clear and convincing reasons supported by substantial evidence.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing

reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830–831 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Here, Plaintiff argues the ALJ failed to properly weigh and consider the examining medical opinions from Dr. Jeanette Higgins, Dr. Kevin Weeks, and Robert Cornell, M.S., C.V.E. ECF No. 12 at 15-17.

**1. Dr. Jeanette Higgins**

In January 2012, Dr. Higgins examined Plaintiff and completed a psychological evaluation to assist in determining eligibility for "SSA disability

benefits." Tr. 202-205. Dr. Higgins diagnosed attention-deficit/hyperactivity disorder NOS (provisional); cannabis dependence; and alcohol dependence in sustained full remission by self-report. Tr. 204. Dr. Higgins conducted an interview and mental status examination and opined functional limitations, including: mild to moderate limitations on Plaintiff's ability to make judgments on simple work-related decisions; moderate to marked limitation on his ability to understand, remember and carry out complex instructions; mild limitations on his ability to interact appropriately with the public; mild to moderate limitation on his ability interact with a supervisor; and moderate limitation on his ability to respond appropriately to usual work situations and to changes in routine work setting. Tr. 204. However, Dr. Higgins opined that Plaintiff "could likely function in a work environment that did not require independent decision making responsibilities and had firm, consistent, and available supervision." Tr. 204-205.

The ALJ granted Dr. Higgins' opinion weight and noted she was able to review the evidence and examine the Plaintiff. Tr. 30. Plaintiff argues that the functional limitations opined by Dr. Higgins, "together with Dr. Higgins [sic] assessed GAF score of 50, which is in the serious/impairment range, renders [Plaintiff] unemployable." ECF No. 12 at 15. As an initial matter, the court notes that Plaintiff does not offer case law or citation to the record to support the general contention that he is "unemployable" based on Dr. Higgins' opinion; nor does

Plaintiff challenge the ALJ's assessed RFC or findings at step five, based on the vocational expert's testimony, that jobs exist in the national economy that Plaintiff can perform. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). As noted above, Dr. Higgins specifically opined that Plaintiff *could* likely function in a work environment that accommodated his limitations. *See* Tr. 204-205. Moreover, as properly noted by Defendant, Plaintiff "overemphasizes the significance of one low GAF score." ECF No. 14 at 14. The Commissioner has explicitly disavowed the use of GAF scores as indicators of disability. 65 Fed. Reg. 50746-01, 50765 (August 21, 2000) ("The GAF scale … does not have a direct correlation to the severity requirements in our mental status disorder listings.").

Finally, as argued by Defendant, it appears that the ALJ properly accounted for the functional limitations opined by Dr. Higgins in the assessed RFC that limits Plaintiff to "simple, routine, repetitive tasks; superficial interaction with the public; occasional interaction with coworkers; and would work best with no tandem tasks performed." Tr. 23. Plaintiff fails to identify with specificity any discrepancy between Dr. Higgins' opinion, and the RFC assessed by the ALJ. Thus, even assuming that the ALJ improperly considered Dr. Higgins' opinion, any error would be harmless. *Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination.").

**2. Dr. Kevin Weeks**

In January 2012, Dr. Weeks conducted an examination of Plaintiff and diagnosed him with "chronic nonunion right scaphoid wrist" and back pain and stiffness. Tr. 210. Dr. Weeks functional assessment opined that Plaintiff was limited to standing and walking for six hours in an eight hour workday; no limitations on sitting; no postural activities; no limitations on workplace environmental activities; mildly limited grip strength otherwise no limitations; and limitations of "10 pounds both occasionally and frequently due to nonunion of the right wrist." Tr. 210. The ALJ granted "weight" to Dr. Weeks' opinion and noted that he was able to review the evidence and examine the Plaintiff. Tr. 30.

Plaintiff argues that "Dr. Weeks limited [Plaintiff] to lifting and carrying 10 pounds, which would render [Plaintiff] unemployable." ECF No. 12 at 16. However, as noted by Defendant, the ALJ accounted for Dr. Weeks' opinion in the assessed RFC by expressly limiting Plaintiff to "lifting and carrying 10 pounds occasionally and 10 pounds frequently with the right upper extremity." ECF No. 14 at 16 (citing Tr. 23). Plaintiff does not identify with specificity any discrepancy between Dr. Weeks' opinion and the RFC; nor does Plaintiff challenge the ALJ's assessed RFC or findings at step five, based on the vocational expert's testimony, that jobs exist in the national economy that Plaintiff can perform. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity

in Plaintiff's briefing). Thus, even assuming that the ALJ improperly considered Dr. Weeks' opinion, any error would be harmless. *Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination.").

**3. Robert Cornell, M.S., C.V.E.**

Plaintiff "was referred to [Mr. Cornell, a vocational consultant,] to identify a level of academic achievement, as well as dexterity and manual manipulation." Tr. 212. Mr. Cornell administered several tests, including: the Wide Range Achievement Test – Revised Level 3 ("WRAT-R3") to measure academic levels; the Pennsylvania Bi-Manual Worksample to assess finger dexterity, gross movement of both arms, and hand eye coordination; and the Crawford Small Parts Dexterity Test to measure fine eye-hand coordination and finger dexterity. Tr. 213-15. Mr. Cornell found that Plaintiff performed "below average" on all the subtests, and noted that he "appear[ed] to be in distress" as he worked through the various activities. Tr. 215. He further noted that Plaintiff's fifth grade level for reading and math, and third grade spelling level, would limit Plaintiff's choices in the labor market. Tr. 215. Overall, Mr. Cornell opined that "[w]hen considering his limited academic abilities, chronic pain issues, and below average abilities for dexterity and manual manipulation, it is this vocational evaluation specialist's opinion that

there are no jobs in the national labor market that [Plaintiff] could perform in as gainful activity." Tr. 216.

The ALJ granted Mr. Cornell's opinion "little weight" for several reasons. Tr. 30. Plaintiff's sole argument is that the ALJ erred by finding that Mr. Cornell "failed to provide the validity" of the testing results of the WRAT-R3. ECF No. 12 at 16 (citing Tr. 30). Defendant argues that the validity of cognitive testing scores is a proper factor for the ALJ to consider in evaluating a medical opinion. ECF No. 14 at 17-19. However, regardless of whether validity of testing is generally permissible for an ALJ to consider, Plaintiff correctly notes that the ALJ's reasoning in this case is vague and "unclear." It is "unclear" in what manner, or for what purpose, the ALJ expected Mr. Cornell to validate this particular test. Thus, this was not a germane and specific reason to reject Mr. Cornell's opinion. *See* SSR 06-03p, *available at* 2006 WL 2329939 at *4 (the ALJ must "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning"). This error is harmless, however, because the remaining reasoning and ultimate finding regarding Mr. Cornell's opinion is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

First, while not identified or challenged by Plaintiff, the ALJ also found that Mr. Cornell's findings on examination were "significantly different" than Dr.

Weeks' examination. Tr. 30. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631; *see also* SSR 06-03p, *available at* 2006 WL 2329939 at *5 ("[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'"). Dr. Weeks noted no abnormalities in the wrists, fingers or thumbs; normal motor strength; and only a mildly decreased grip strength in the right hand only. Tr. 30, 209-10. This is inconsistent with Mr. Cornell's findings that Plaintiff had a below average performance on dexterity testing, and "an increase of pain, aching and cramping of his hands, thumbs and wrists;" which, in Mr. Cornell's opinion, would make it difficult for him to function in jobs requiring the use of upper extremities with regards to reaching, handling and fingering activities. Tr. 215. The ALJ also properly noted that Plaintiff reported problems with his left hand to Mr. Cornell, but failed to mention any difficulties with his left hand to Dr. Weeks. Tr. 29. The inconsistency between the opinion of Dr. Weeks, who is an acceptable medical source, and the opinion of Mr. Cornell, who is considered an "other" source, was a germane and specific reason to discount Mr. Cornell's opinion.

Second, again unchallenged by the Plaintiff, the ALJ found that Mr. Cornell's conclusions "was apparently based in significant part upon [Plaintiff's]

unreliable subjective allegations.” Tr. 30. “An ALJ may reject a treating physician’s opinion if it is based ‘to a large extent’ on a claimant’s self-reports that have been properly discounted as incredible.” *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In support of this reasoning, the ALJ cites Mr. Cornell’s consistent reference to Plaintiff’s complaints of pain and cramping in his hands, thumbs, and wrists; and “groaning sounds” made throughout Mr. Cornell’s testing. Tr. 30, 214-15. As discussed in detail above, the ALJ’s adverse credibility finding in this case was supported by substantial evidence. This was a germane reason to reject Mr. Cornell’s opinion.

## CONCLUSION

After review the court finds the ALJ’s decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff’s Motion for Summary Judgment, ECF No. 12, is **DENIED**.
2. Defendant’s Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** March 31, 2016.

*s/Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge